## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **RYAN SLATEN,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:20-00253-N** |
| | ) | |
| **ANDREW M. SAUL,** | ) | |
| ***Commissioner of Social Security,*** | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ryan Slaten brought this action under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Defendant Commissioner of Social Security denying his application for a period of disability and disability insurance benefits (collectively, "DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*[1] Upon due consideration of the parties' briefs (Docs. 17, 19) and those portions of the transcript of the administrative record (Doc. 16) relevant to the issues raised, and with the benefit of oral argument, the Court finds that the Commissioner's final decision is due to be **AFFIRMED**.[2]

---

[1] "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987) (citing 42 U.S.C. § 423(a)(1)(D) (1982 ed., Supp. III)).

[2] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 22, 23).

## I.     *Procedural Background*

Slaten filed the subject DIB application with the Social Security Administration ("SSA") on January 16, 2017. After it was initially denied, Slaten requested, and on November 18, 2019, and March 27, 2019, received, hearings on his application with an Administrative Law Judge ("ALJ") of the SSA's Office of Disability Adjudication and Review. On April 17, 2019, the ALJ issued an unfavorable decision on Slaten's DIB application, finding him not entitled to benefits. (*See* Doc. 16, PageID.84-98).

The Commissioner's decision on Slaten's application became final when the Appeals Council for the Office of Disability Adjudication and Review denied his request for review of the ALJ's unfavorable decision on March 26, 2020. (*See id.*, PageID.70-75). Slaten subsequently brought this action under § 405(g) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.    *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation omitted).

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. ——, ——, 135 S. Ct. 808, 815, 190 L. Ed. 2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is "more than a mere scintilla." *Ibid.*; see, *e.g.*, [*Richardson v.*] *Perales*, 402 U.S. [389,] 401, 91 S. Ct. 1420[, 28 L. Ed. 2d 842 (1971)] (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S. Ct. 206. See *Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

In reviewing the Commissioner's factual findings, a court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence

preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

Put another way, "[u]nder the substantial evidence standard, we cannot look at the evidence presented to [an administrative agency] to determine if interpretations of the evidence other than that made by the [agency] are possible. Rather, we review the evidence that was presented to determine if the findings made by the [agency] were unreasonable. To that end, [judicial] inquiry is highly deferential and we consider only whether there is substantial evidence for the findings made by the [agency], *not* whether there is substantial evidence for some *other* finding that could have been, but was not, made. That is, even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1029 (11th Cir. 2004) (en banc) (citations and quotation omitted). "In sum, findings of fact made by administrative agencies, … may be reversed by this court only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Adefemi*, 386 F.3d at 1027.[3]

---

[3] *See also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence."); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (under the substantial evidence standard, "we do not reverse the [Commissioner] even if this court, sitting as a finder of fact, would have reached a

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [A court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[4]

---

contrary result…"); *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned."); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

[4] However, "district court judges are not required to ferret out delectable facts buried in a massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings), and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). The Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam) (same); *Hunter v. Comm'r of Soc. Sec.*, 651

The "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if

---

F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her pain medication because her initial brief simply mentions the issue without providing any supporting argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue')."); *Figuera v. Comm'r of Soc. Sec.*, 819 F. App'x 870, 871 n.1 (11th Cir. 2020) (per curiam) (unpublished) ("Figuera also argues the ALJ failed to properly assess her credibility … However, Figuera did not adequately raise this issue in her brief before the district court. She raised the issue only summarily, without any citations to the record or authority. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (noting that a party 'abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority'). As a result, we do not address the sufficiency of the ALJ's credibility finding.").

supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). " 'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.' " *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)."). Moreover, an ALJ's decision must "state with at least some measure of clarity the grounds for [the] decision."

*Owens*, 748 F.2d at 1516; *Winschel*, 631 F.3d at 1179. A court cannot "affirm simply because some rationale might have supported the [Commissioner]' conclusion[,]" as "[s]uch an approach would not advance the ends of reasoned decision making." *Owens*, 748 F.2d at 1516. Rather, "an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself." *Fed. Power Comm'n v. Texaco Inc.,* 417 U.S. 380, 397, 94 S. Ct. 2315, 41 L. Ed. 2d 141 (1974)  (quotation omitted). *See also Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."); *Nance v. Soc. Sec. Admin., Comm'r*, 781 F. App'x 912, 921 (11th Cir. 2019) (per curiam) (unpublished)[5] ("Agency actions … must be upheld on the same bases articulated in the agency's order." (citing *Texaco Inc.,* 417 U.S. at 397, and *Newton*, 209 F.3d at 455)).

Eligibility for DIB requires that a claimant be disabled, 42 U.S.C. § 423(a)(1)(E), meaning that the claimant is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or

---

[5] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[6]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging

---

[6] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

If a court determines that the Commissioner reached his decision by focusing upon one aspect of the evidence and ignoring other parts of the record[, i]n such circumstances [the court] cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). Nevertheless, " 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision,

so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.' " *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) (quotation and brackets omitted)).

When, as here, the ALJ denies benefits and the Appeals Council denies review of that decision, a court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Nevertheless, "when the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

### III.   *Summary of the ALJ's Decision*

At Step One, the ALJ found that Slaten met the applicable insured status requirements through March 31, 2016, and had not engaged in substantial gainful activity from the alleged disability onset date of January 2, 2016, through his date last insured. (Doc. 16, PageID.89). At Step Two, the ALJ found that Slaten had the following severe impairments during the relevant adjudicatory period: retinitis pigmentosa and borderline intellectual functioning.[7] (Doc. 16, PageID.89). At Step

---

[7] "The severity regulation increases the efficiency and reliability of the evaluation

Three,[8] the ALJ found that, during relevant adjudicatory period, Slaten did not have an impairment or combination of impairments that met or equaled the severity of a specified impairment in Appendix 1 of the Listing of Impairments, 20 C.F.R. § 404, Subpt. P, App. 1. (Doc. 16, PageID.89-92).

At Step Four,[9] the ALJ found that, during relevant adjudicatory period,

---

process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Yuckert*, 482 U.S. at 153. *See also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) (per curiam) (Step Two "is a 'threshold inquiry' and 'allows only claims based on the most trivial impairments to be rejected.' " (quoting *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)). "[A]n 'impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.' A claimant's burden to establish a severe impairment at step two is only 'mild.' " *Schink*, 935 F.3d at 1265 (citation omitted) (quoting *McDaniel*, 800 F.2d at 1031).

[8] Conversely to Step Two, Step Three "identif[ies] those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Yuckert*, 482 U.S. at 153.

[9] At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).

> If the claimant can return to her past relevant work, the ALJ will

Slaten had the residual functional capacity (RFC) "to perform a full range of work at all exertional levels[10] but with the following nonexertional limitations: [he] can read normal size print and view a computer monitor, but he cannot engage in commercial vehicle driving or work outside in the night or before the sun rises[; h]e can never climb ladders, ropes, or scaffolds; [he] can never be exposed to unprotected heights, moving mechanical parts, or high speed hand-held or tabletop machinery[; h]e can avoid ordinary workplace hazards[; his] ability to understand, remember, and apply information is limited to performing simple and routine tasks;

---

conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

[10] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. The criteria for "very heavy" work are as follows:

Very heavy work involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. If someone can do very heavy work, we determine that he or she can also do heavy, medium, light and sedentary work.

20 C.F.R. § 404.1567(e).

his ability to use judgment is limited to simple work-related decisions; he can interact with supervisors, coworkers, and the public occasionally; … he can deal with occasional changes in a routine work setting[; and h]e can sustain concentration and attention for two-hour periods. " (Doc. 16, PageID.92-96).

Based on the RFC and the testimony of a vocational expert,[11] the ALJ found that Slaten was incapable of performing any past relevant work during the relevant adjudicatory period. (Doc. 16, PageID.96). However, at Step Five, after considering additional testimony from the vocational expert, the ALJ found that there exist a significant number of jobs in the national economy as a counter supply worker, lining stuffer, and laundry worker that Slaten could perform during the relevant adjudicatory period, given his RFC, age, education, and work experience. (*Id.*, PageID.97-98). Thus, the ALJ found that Slaten was not disabled under the Social Security Act. (*Id.*, PageID.98).

## IV.   *Analysis*

Courts "review the decision of the ALJ as to whether the claimant was entitled to benefits during a specific period of time…" *Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999) (per curiam). "For DIB claims, a claimant is eligible for benefits where []he demonstrates disability on or before the last date for which []he were insured." *Moore*, 405 F.3d at 1211 (citing 42 U.S.C. § 423(a)(1)(A) (2005)).

---

[11] "A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at 1240.

Slaten argues the ALJ erroneously found that his retinitis pigmentosa was not disabling on or before his date last insured, March 31, 2016. The undersigned disagrees, as substantial evidence supports that determination, and no error of law has been shown. Slaten claims "the ALJ determined that the lack of a diagnosis [of retinitis pigmentosa] from before the date last insured settled the matter" (Doc. 17, PageID.526), but this assertion is contradicted by the fact the ALJ determined at Step Two that Slaten's retinitis pigmentosa was a severe impairment "[t]hrough the date last insured" (Doc. 16, PageID.89), and included limitations for vision impairment in the RFC. Rather, the ALJ simply determined that the record did not support a finding that the condition caused limitations to a *disabling* degree prior to the date last insured. Substantial evidence supports that determination.

"Retinitis pigmentosa … is a group of rare, genetic disorders that involve a breakdown and loss of cells in the retina — which is the light sensitive tissue that lines the back of the eye. Common symptoms include difficulty seeing at night and a loss of side (peripheral) vision."[12] As noted in the ALJ's decision, "[w]hile the record reflects that [Slaten] has been diagnosed with retinitis pigmentosa, the first record of [Slaten] receiving treatment for vision difficulties is October 2016, several months after the date last insured." (*See* Doc. 16, PageID.93). At that examination, Slaten reported he had lost his glasses about a month earlier and complained of blurry vision, but he "denied noticing any visual changes and night or any side

---

[12] National Eye Institute, *Retinitis Pigmentosa* https://www.nei.nih.gov/learn-about-eye-health/eye-conditions-and-diseases/retinitis-pigmentosa (last visited June 16, 2021).

vision loss." (*Id.*). Indeed, Slaten "reported that he had 'good vision' his whole life until he lost his glasses" (*id.*), indicating that his vision problems were largely controlled by the use of glasses at least prior to this examination. *See Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) ("A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." (quotation omitted)). Slaten was diagnosed with "possible retinitis pigmentosa due to a restricted field of vision" at this examination, but he reported "this was the first time he had heard about retinal changes." (Doc. 16, PageID.93) Slaten continued to seek treatment for worsening vision following that examination, but did not report blurry peripheral vision and poor night vision until early 2017. (*See id.*). The ALJ also noted that Slaten reported he regularly jogged and was capable of avoiding hazards while doing so. (*Id.*, PageID.95).

Slaten is correct that there is ample evidence showing that his retinitis pigmentosa existed to some degree prior to his date last insured and worsened after the October 2016 examination, and this evidence could reasonably support a conclusion that this condition did become disabling prior to his date last insured. However, as explained above, this Court is not concerned with what other possible conclusions the record could support, but only whether the conclusion the Commissioner actually reached is reasonable and supported by substantial evidence. "If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner[,]" *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9,

2001), and the Commissioner's factual conclusions must be affirmed if supported by substantial evidence, even if the evidence preponderates against them. *Ingram*, 496 F.3d at 1260. The ALJ discussed Slaten's treatment records documenting a worsening of his vision after the October 2016 examination. However, the lack of any treatment records for vision difficulties from on or prior to the date last insured, coupled with Slaten's own denial of any significant vision difficulties prior to losing his glasses in late 2016, is substantial evidence supporting the ALJ's decision that Slaten's retinitis pigmentosa, while "severe" for purposes of Step Two, did not produce disabling limitations on or before the date last insured, as is required for DIB. Indeed, a medical expert who reviewed the record and testified at Slaten's second ALJ hearing opined that Slaten's "impairments did not meet or equal the Medical Listings during the adjudication period," nor would they "have been so severe as to eliminate all work." (Doc. 16, PageID.94).

Slaten highlights the fact that the Commissioner issued a favorable decision on his application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*,[13] which was filed the same day as his DIB application. However, SSI claims are not evaluated based on a date last insured like DIB claims are. Instead, "[f]or SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file." *Moore*, 405 F.3d at 1211. Thus, to prevail on his SSI application, Slaten had to show

---

[13] "Title XVI of the Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program." *Yuckert*, 482 U.S. at 140 (citing 42 U.S.C. § 1382(a)).

disability on or after January 16, 2017, the application date, as opposed to on or before his date last insured of March 31, 2016, for his DIB application. As noted above, there is record evidence indicating that Slaten's vision problems worsened after his October 2016 examination, but substantial evidence supports the reasonable conclusion that his vision problems were controlled by the use of glasses prior to that examination. Thus, there is no inconsistency in the Commissioner's decision on his two applications.[14]

Slaten claims the ALJ failed to comply with the following guidance from Social Security Ruling 18-1p (https://www.ssa.gov/OP_Home/rulings/di/01/SSR2018-01-di-01.html):

> [For non-traumatic impairments, w]e consider whether we can find that the claimant first met the statutory definition of disability at the earliest date within the period under consideration, taking into account the date the claimant alleged that his or her disability began. We review the relevant evidence and consider, for example, the nature of the claimant's impairment; the severity of the signs, symptoms, and laboratory findings; the longitudinal history and treatment course (or lack thereof); the length of the impairment's exacerbations and remissions, if applicable; and any statement by the claimant about new or worsening signs, symptoms, and laboratory findings. The date we find that the claimant first met the statutory definition of disability may predate the claimant's earliest recorded medical examination or the date of the claimant's earliest medical records, but we will not

---

[14] Moreover, the Eleventh Circuit has recognized that, "[i]n light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015).

consider whether the claimant first met the statutory definition of disability on a date that is beyond the period under consideration.

If there is information in the claim(s) file that suggests that additional medical evidence relevant to the period at issue is available, we will assist with developing the record and may request existing evidence directly from a medical source or entity that maintains the evidence. We may consider evidence from other non-medical sources such as the claimant's family, friends, or former employers, if we cannot obtain additional medical evidence or it does not exist (e.g., the evidence was never created or was destroyed), and we cannot reasonably infer the date that the claimant first met the statutory definition of disability based on the medical evidence in the file.

While the ALJ did not specifically cite SSR 18-1p in his decision, he nevertheless adequately applied its guidance; the fact that Slaten disagrees with how the ALJ did so does not equate to a complete failure to do so. The ALJ considered "the longitudinal history and treatment course (or lack thereof)" by noting the lack of treatment history for retinitis pigmentosa prior to the date last insured. The ALJ also considered "the severity of the signs [and] symptoms" by noting Slaten's own statements at the October 2016 examination that he had "good vision" with his glasses and had not noticed any visual changes at the time, such as "night or any side vision loss." The ALJ also considered "the length of the impairment's exacerbations" by noting that the evidence only indicated a worsening of Slaten's vision after his date last insured. The ALJ's decision further indicates he appreciated "the nature of" retinitis pigmentosa, which is a condition that worsens over time and therefore is not necessarily disabling right away.

Contrary to Slaten's argument, the ALJ also considered both the medical and

non-medical evidence of record. In addition to the longitudinal objective medical evidence, the ALJ considered Slaten's subjective testimony, the medical opinions of several doctors, and statements from Slaten's former coworkers. As he was required to do, the ALJ "state[d] with particularity the weight given to [the] different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179. The ALJ reasonably found that certain physicians' opinions were vague and not bolstered by the above-discussed evidence to the extent they suggested disabling limitations on or before the date last insured. To the extent the medical opinions supported disabling limitations after the date last insured, any error the ALJ made in considering them is harmless. The ALJ also articulated specific reasons for rejecting the statements of Slaten's former coworkers. Slaten primarily highlights his former coworkers' opinions as to why Slaten was unable to perform his past jobs; however, the ALJ agreed that Slaten was not able to perform any past relevant work, so any error in that regard is also harmless.[15]

No reversible error having been shown, the Court finds that the Commissioner's final decision denying Slaten's application for benefits is therefore due to be **AFFIRMED**.

---

[15] Slaten also claims the ALJ's hypothetical was incomplete because it did not mention "tunnel vision" or include a limitation to "avoid all tasks requiring good peripheral vision." However, the ALJ specifically discussed how he accounted for Slaten's visual impairments in the RFC, including "his potentially constricted field of vision" (*see* Doc. 16, PageID.94), and Slaten has shown no error in that regard. To the extent Slaten argues the ALJ should have included greater limitations, "the ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported." *Crawford*, 363 F.3d at 1161.

## V.    *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision denying Slaten's January 16, 2017 DIB application is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

Final judgment shall issue separately in accordance with this order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 17th day of June 2021.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**